08 C 333

JUDGE COAR
MAGISTRATE JUDGE VALDEZ

# EXHIBIT A

EXHIBIT No.

# AGREEMENT

between

## PLUMBING CONTRACTORS ASSOCIATION
## OF
## CHICAGO and COOK COUNTY

and




## CHICAGO JOURNEYMEN PLUMBERS'
## LOCAL UNION 130, U.A.

June 1, 2001 through May 31, 2004

278

# AGREEMENT

between

## PLUMBING CONTRACTORS ASSOCIATION
## OF
## CHICAGO and COOK COUNTY

and




## CHICAGO JOURNEYMEN PLUMBERS'
## LOCAL UNION 130, U.A.

June 1, 2001 through May 31, 2004

EXHIBIT No.____

## TABLE OF CONTENTS


| | Page |
|---|---|
| ARTICLE I RECOGNITION | 7 |
| SECTION 1.1. Parties to the Agreement | 7 |
| SECTION 1.2. Recognition Clause | 7 |
| SECTION 1.3. Union Shop | 8 |
| SECTION 1.4. Subcontracting | 8 |
| SECTION 1.5. Moonlighting | 8 |
| SECTION 1.6. Access to Premises | 9 |
| SECTION 1.7. Exclusivity | 9 |
| ARTICLE II STRIKES AND LOCKOUTS | 9 |
| SECTION 2.1. Lockouts | 9 |
| SECTION 2.2. Employee Job Action | 10 |
| ARTICLE III DISPUTE RESOLUTION | 10 |
| SECTION 3.1. Grievance Arbitration | 10 |
| SECTION 3.2. Joint Arbitration Board | 10 |
| SECTION 3.3. Audits | 10 |
| SECTION 3.4. Other Contract Violations | 11 |
| SECTION 3.5. Hearing | 12 |
| SECTION 3.6. Powers of the Joint Arbitration Board | 13 |
| SECTION 3.7. Indemnification of the Joint Arbitration Board | 13 |
| ARTICLE IV WORKING CONDITIONS | 14 |
| SECTION 4.1. General Policy | 14 |
| SECTION 4.2. Reporting Accidents | 14 |
| SECTION 4.3. Employer Insurance. | 14 |
| SECTION 4.4. Unsafe Working Conditions | 14 |
| SECTION 4.5. Plumbing Codes | 14 |
| SECTION 4.6. Older Workers | 15 |
| SECTION 4.7. Non-Discrimination Policy | 15 |
| SECTION 4.8. Staffing | 15 |
| SECTION 4.9. Pipe Cutting | 17 |
| SECTION 4.10. Specifications | 18 |
| SECTION 4.11. Plumbing Supervision | 18 |
| SECTION 4.12. Rule Violators | 18 |
| SECTION 4.13. OSHA and HAZCOM Training | 18 |
| SECTION 4.14. OSHA and HAZCOM Violations | 19 |
| SECTION 4.15. Automobile Not Required | 19 |

EXHIBIT No.

## TABLE OF CONTENTS


Page

SECTION 4.16. Work Connected Expenses .......... 19
SECTION 4.17. Travel Expenses .......... 19
SECTION 4.18. Tool Provision .......... 20
SECTION 4.19. Clothing Provision .......... 20

ARTICLE V HOURS AND OVERTIME .......... 20
SECTION 5.1. Work Day and Work Week .......... 22
SECTION 5.2. Overtime .......... 22
SECTION 5.3. Show Up Pay .......... 22
SECTION 5.4. Holidays .......... 22
SECTION 5.5. Shift Work .......... 23

ARTICLE VI WAGES .......... 23
SECTION 6.1. Wage Rates and Fringe Benefits .......... 23
SECTION 6.2. Foreman's Wage .......... 24
SECTION 6.3. Apprentice's Wage .......... 24
SECTION 6.4. Pay Day .......... 24
SECTION 6.5. Wage Payment .......... 24
SECTION 6.6. Union Dues Deduction .......... 25
SECTION 6.7. Pay at Separation .......... 25
SECTION 6.8. Bond Requirement .......... 25
SECTION 6.9. Prevailing Wage Payment .......... 27
SECTION 6.10. Retirement Savings Fund .......... 27

ARTICLE VII FOREMEN .......... 28
SECTION 7.1. Foreman's Duties .......... 28
SECTION 7.2. Foreman's Schedule .......... 29

ARTICLE VIII APPRENTICES .......... 29

ARTICLE IX FRINGE BENEFITS .......... 30
SECTION 9.1. Savings Plan .......... 30
SECTION 9.2. Health & Welfare and Pension Plan .......... 30
SECTION 9.3. Apprentice Trust Fund .......... 31
SECTION 9.4. Plumbing Council of Chicagoland .......... 31
SECTION 9.5. Group Legal Services Plan Fund .......... 34
SECTION 9.6. Industry Advancement Fund .......... 34
SECTION 9.7. Non-Deduction from Wages .......... 34
SECTION 9.8. Contribution and Deduction Due Dates .......... 34
SECTION 9.9. Employer Recording .......... 36




## TABLE OF CONTENTS


Page

ARTICLE X HIRING .......... 36

ARTICLE XI ON THE JOB INJURIES .......... 38

ARTICLE XII INDUSTRY COMMITTEE .......... 38

ARTICLE XIII JURISDICTIONAL DISPUTES .......... 38

ARTICLE XIV SUCCESSORS AND ASSIGNS .......... 39
SECTION 14.1. Employer Entities Bound .......... 39
SECTION 14.2. Successors and Assigns .......... 39

ARTICLE XV ANNUAL REOPENERS .......... 39

ARTICLE XVI MISCELLANEOUS .......... 40
SECTION 16.1. Separable Provisions .......... 40
SECTION 16.2. Duration of Agreement .......... 40

APPENDIX A OCCUPATIONAL JURISDICTION .......... 42

APPENDIX B FLEXIBLE WORK DAY AND WORK WEEK .......... 45

APPENDIX C WAGE RATES AND FRINGE BENEFITS .......... 47

APPENDIX D ALCOHOL AND DRUG PROGRAM .......... 49


** As used herein references to the masculine gender shall also refer to the feminine. **

EXHIBIT NO.

## ARTICLE I
### RECOGNITION

SECTION 1.1. Parties to the Agreement. This Agreement is made and entered into as of June 1, 2001 between the Plumbing Contractors Association of Chicago and Cook County, solely for and on behalf of each of its individual members, who are duly licensed by law and bonded to engage in the plumbing business, are established in that business, intend to employ not less than two (2) journeymen or one (1) journeymen and one (1) apprentice, and hereafter are collectively referred to as "Employer" or "Employers," and Chicago Journeymen Plumbers' Local Union 130, U.A., which is composed of competent licensed journeymen mechanics who are duly authorized by law to install and inspect all plumbing work, and which hereinafter is referred to as "Union."

SECTION 1.2. Recognition Clause. The Employers recognize the Union as the exclusive collective bargaining agent for all of their employees who perform any of the work applicable within the Fifty-One (51) Articles of Jurisdiction of the United Association as set forth in "Appendix A" to this Agreement for which the Union has been chartered by the United Association within the City of Chicago, Illinois, Cook County, Illinois and vicinity, Will County, Illinois outside the city limits of Joliet, Illinois, as delineated by the United Association in 1972, that part of DuPage County, Illinois known as the Argonne National Laboratories, fifty percent (50%) of the employees employed by the Employers who (whose shop is located in the geographic jurisdiction of Local Union 130) are parties to this Agreement when performing said work in Lake County, Illinois, and wherever else the Union has territorial jurisdiction. The Union recognizes the Plumbing Contractors Association of Chicago and Cook County as the exclusive bargaining agent of its individual member Employers with respect to their employees.

Employees covered by this Agreement shall place in position and connect all materials, appurtenances, devices, fixtures and equipment used in the construction of plumbing as well as handle, unload and distribute all of the above mentioned upon and after its arrival on the job site or premises. When fixtures or equipment are protected by covering during construction, such covering shall be put on and removed and fixtures cleaned by employees covered by this Agreement.

Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits

and boxes used in connection with work falling under the jurisdiction of the Union.

It is understood and agreed that the foregoing Paragraphs of this Section shall not be construed as limiting the scope of bargaining unit work and that employees covered by this Agreement shall perform all work covered by the Fifty-One (51) Articles of Jurisdiction of the United Association, included in Appendix A which comes within the work jurisdiction for which the Union has been chartered by the United Association.

SECTION 1.3. Union Shop. All journeymen and apprentices who are now in the employ of the Employers covered by this Agreement, and all journeymen and apprentices who are hereafter employed by Employers covered by this Agreement, shall, as a condition of employment, become members of the Union on the earliest date provided by applicable federal law after their employment, or the effective date of this agreement, whichever is later, and shall, as a condition of employment, remain members of the Union during the term of this Agreement.

SECTION 1.4. Subcontracting. No journeyman shall be permitted to subcontract or accept a lump sum payment (lump) for the installation of any work under the jurisdiction of the Union. Parties violating this Section shall be penalized by their respective organizations through the Joint Arbitration Board. The Employers agree not to sublet, lump or contract for labor any work which comes under the jurisdiction of the Union with any member of the Union. Such subletting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement. Nothing herein prohibits subcontracting work to MBE, WBE, and DBE as long as those entities are signatory to an Agreement with the Union.

The Employer agrees that in the event the Employer subcontracts any work coming under the provisions of this Agreement to any other person or firm, the Employer shall subcontract the same only to another Employer who is a party to this Agreement. (A refusal of employees to render services upon a job site where this subsection is violated, shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.)

SECTION 1.5. Moonlighting. No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a



trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

SECTION 1.6. Access to Premises. Duly authorized representatives of the Union or of the Joint Arbitration Board shall, for cause, be allowed to visit any job and/or any Employer's place of business during working hours to interview the Employer or the Employer's duly authorized representative, or the men in his employ, to determine compliance with the Agreement. Further, it is agreed that job site visits by a union representative are without restrictions but that visits to the shop shall be by appointment if that is the Employer's policy.

Duly authorized representatives of the Fringe Benefit Funds shall be extended the same right, as described above, in order to inspect or audit all books and records of the Employer which pertain or relate to the Employer's compliance with this Agreement. Such records which shall be available for inspection or audit include but are not limited to payroll and time records, time books, payroll and income tax returns, blueprints, contracts, invoices, permits, and documents related to worker's compensation, public liability and unemployment insurance coverage. It is understood and agreed that such visit, inspection or audit shall in no way hinder the progress of the work being performed. Should the Employer refuse to permit such inspection or audit as authorized by this Article, the Employer shall be liable for all costs and legal fees incurred by the Union, the Fringe Benefit Funds or the Joint Arbitration Board in obtaining a court order requiring the Employer to permit such inspection or audit. Such liability shall be in addition to and not in lieu of any relief or remedies available in such proceeding to the Union, the Trustees of the Fringe Benefit Funds or the Joint Arbitration Board under any Illinois or federal law.

SECTION 1.7. Exclusivity. Any agreement entered into between the parties hereto with any other Employer association, Employer or labor organization engaged in the Plumbing Industry shall be brought to the attention of the other party and no Agreement which will in any way conflict with the provisions of this Agreement will be made by either party to this Agreement.

## ARTICLE II
## STRIKES AND LOCKOUTS

SECTION 2.1. Lockouts. The Employer agrees that there shall be no lockout of employees during the term of this Agreement.

SECTION 2.2. Employee Job Action. The Union agrees that there shall be no abandonment of work over any matter which is subject to arbitration,

provided, however, that the Union may withdraw its members from the employ of, picket and/or use other lawful economic means against any Employer by reason of the Employer's non-payment of wages, deductions or contributions or the Employer's failure to obtain, maintain in full force and effect and keep on file with the Union the requisite bond or letter of credit and workers' compensation insurance as more fully provided under this Agreement, notwithstanding that disputes over such matters are subject to arbitration hereunder.

## ARTICLE III
## DISPUTE RESOLUTION

SECTION 3.1. Grievance Arbitration. Disagreements or disputes arising under or which involve interpretations of this Agreement, shall be processed and settled by arbitration in the manner set forth in this Article.

SECTION 3.2. Joint Arbitration Board. The parties hereto agree that all arbitrable disputes arising between them shall be submitted to a Joint Arbitration Board. The Joint Arbitration Board shall be comprised of ten (10) members, consisting of five (5) members appointed by the Plumbing Contractors Association of Chicago and Cook County and five (5) members appointed by the Union.

The duties of the Joint Arbitration Board shall be to decide on all cases as presented and in conformity with the sections contained in this Agreement. In the event of deadlock by the Board, whereby a decision cannot be rendered, the case will be assigned to an arbitrator mutually agreeable to the Board members.

The Joint Arbitration Board shall meet no less than twelve (12) times during the calendar year, or as needed, for the purpose of considering current and new business. The reasonable and necessary expenses and costs incurred by the Joint Arbitration Board in performing its functions under this Agreement, as authorized by the Union, The Fringe Benefit Funds and Plumbing Council of Chicagoland who are entitled to payments or contributions under this Agreement, shall be paid by them in proportion to their interests out of the sums collected as liquidated damages pursuant to Article IX, Section 9.8 hereof, to the extent that such sums are available; otherwise such expenses and costs shall be borne and paid for by the parties thereto.

Within a period of thirty (30) days time after the execution of this Agreement, the Joint Arbitration Board shall meet, organize, elect a Chairman, Secretary and Treasurer, and transact any business that may properly come before the Joint Arbitration Board.



SECTION 3.3. Audits. In the event that an audit by the accountants for the Union and/or the Fringe Benefit Funds to which the Employer is required to make contributions under this Agreement discloses an alleged underpayment of wages, deductions or contributions required by this Agreement, the Employer shall have ten (10) days after notification by the accountants of such alleged underpayment to pay such delinquencies and any interest and/or liquidated damages due with respect thereto in accordance with Article IX, Section 9.8 hereof, or if the Employer disagrees with the audit or any part thereof, to arrange to meet with the accountants within said ten (10) day period to discuss the area(s) of disagreement and present all records in support of his position(s). If the Employer fails to make the payments shown on the audit, fails to meet with the accountants and produce said records or if the disagreement(s) is not resolved, the matter will be referred by the accountants to the attorneys for the Union and/or the Funds. The attorneys shall attempt to resolve the matter by requesting in writing that the Employer meet with them within ten (10) days. If the Employer fails within ten (10) days of such request to pay such delinquencies and interest and/or damages due in accordance with Article IX, Section 9.8 of this Agreement, to arrange such meeting or fails to appear at such meeting and produce all records and any other evidence, including witnesses, in support of its position(s) at such meeting, or if the matter is not resolved at such meeting, the attorneys will notify the Secretary of the Joint Arbitration Board of the existence of a dispute under this Agreement. No records or other evidence, including witnesses, which the Employer has not produced for the accountants or the attorneys will be considered by the Joint Arbitration Board at any hearing before it with regard to such dispute, nor will the Board's proceedings be delayed by the Employer's production of such other or additional records or evidence.

Action will be brought before the Joint Arbitration Board when any audit reveals that a licensed journeyman plumber and/or apprentice or any other party who performs jurisdictional work has not been paid the prevailing rate.

The Fringe Benefit Fund trustees will review uncontested audits for underpayment of wages, and inform the Joint Arbitration Board of each violation.

SECTION 3.4. Other Contract Violations. In the event of an alleged contract violation other than one which is subject to Section 3.3 of this Article, immediately above, a Business Representative or other representative designated by the Union will notify the Employer of such alleged violation and attempt to resolve the matter informally. If the matter is not resolved or if the Employer refuses to meet in a reasonable and timely fashion with the Union's Representa-

tive to resolve the matter, said representative shall notify the Secretary of the Joint Arbitration Board in writing of the existence of a dispute.

It shall be considered a violation of this Agreement for any plumbing contractor to intentionally omit backing supports for plumbing fixtures and accessories from a bid package. Further, any plumbing foreman or superintendent who wilfully refrains from directing journeymen or apprentices under his/her charge to install all backing and accessories related to a plumbing system shall be found in violation of this Agreement. Both the Employer and the employee may be summoned before the Joint Arbitration Board for appropriate action.

If a plumbing contractor submits a bid in accordance with the above, and it is not accepted, there will be no action taken against the contractor or his employee by the Union.

SECTION 3.5. Hearing. After receipt of a notice of dispute under Section 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute, together with a copy of the written notice of the dispute. The Board members present at the hearing shall hear the evidence in the case and shall render a decision which it will issue in writing over the signature of the Secretary of the Board. Said decision shall be final and binding on the parties to this Agreement. The Secretary of the Board will make or direct the making of the official minutes or transcription of the hearing. No other recording of the hearing is permitted. The Employer must appear at the hearing. Appearance through an outside representative only does not constitute the Employer's appearance. If the Employer is unable to so appear at the date, time and place set forth in the notification of hearing, he shall promptly notify the Board's Secretary in writing of the reasons therefor and request a postponement. Such request for postponement must be received by the Secretary no later than seventy-two (72) hours before the time scheduled for the hearing. A request for a postponement will be granted only for good and sufficient reasons. No Employer will be granted more than one (1) postponement in the same case. If the Employer fails to appear at a scheduled hearing or at a hearing postponed to a later date at his request or if an Employer's request for postponement is not received by the Board's Secretary in the timely manner as set forth hereinabove or is denied, the Board members shall hear the case at the appointed time notwithstanding the Employer's failure to appear and shall decide the case upon the evidence before it in the same manner as set forth hereinabove, which decision shall be final and binding on the parties to this Agreement.



SECTION 3.6. Powers of the Joint Arbitration Board. The Joint Arbitration Board shall have full power to enforce this Agreement against offending employees and/or Employers by appropriate penalties or remedies including, without limitation, fines, replacement of defective work without pay, or other appropriate sanctions. The Joint Arbitration Board shall have full power to summon Employers and employees covered by this Agreement against whom charges of violations have been preferred and to summon Employers and employees covered by this Agreement to testify in any manner before the Joint Arbitration Board. Such summons shall be served by registered or certified mail by the Secretary of the Joint Arbitration Board before which such dispute is pending. Such summons may compel the production of any document or the testimony of any witness which the Joint Arbitration Board deems relevant to the resolution of the case. Failure of the Employer or employees to respond when so summoned, except for valid reason, shall subject him or them to the payment of any cost incurred by the Joint Arbitration Board in connection with such failure to respond.

Decisions of the Joint Arbitration Board shall be by majority vote. A majority shall consist of fifty percent (50%) plus one (1) of those members of the Joint Arbitration Board present and voting.

SECTION 3.7. Indemnification of the Joint Arbitration Board. The parties hereto agree that the members of the Joint Arbitration Board representing either or both of them in proceedings before such Joint Arbitration Board under the provisions of this Agreement shall be indemnified as Joint Arbitration Board members against judgment, court costs and attorney's fees incurred and/or paid by the Joint Arbitration Board members in defending any suit or legal proceeding brought against the Joint Arbitration Board members in their respective capacity to enforce any liability or alleged liability on account of any loss, claim or damage which, if established against the Joint Arbitration Board members, shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this Agreement.

In the event of any other suit or action against a member or members of the Joint Arbitration Board for or on account of an act performed pursuant to the authority provided for in this Agreement, the Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such rules and provisions as the Joint Arbitration Board may establish relating to the disposition of such funds.

In consideration of such indemnity, the Joint Arbitration Board members shall promptly give notice to the Joint Arbitration Board, and the Union and

the Plumbing Contractors Association of Chicago and Cook County of the institution of any such suit or legal proceeding. At the request of the Union or the Plumbing Contractors Association of Chicago and Cook County, the Joint Arbitration Board members shall furnish copies of all pleadings and other papers therein, and at the election of either the Union or the Plumbing Contractors Association of Chicago and Cook County shall permit either or both to conduct the defense of such suit or legal proceedings in the name of the Joint Arbitration Board by and through attorneys of their own selection. In the event of such election the named Joint Arbitration Board member or members shall give all reasonable information and assistance other than pecuniary which shall be deemed necessary to the proper defense of suit or legal proceeding.

Joint Arbitration Board members found guilty of fraudulent or illegal conduct shall not be indemnified under this Section.

## ARTICLE IV
## WORKING CONDITIONS

SECTION 4.1. General Policy. The Employers agree to make all reasonable provisions for the safety and health of their employees during the hours of their employment. The Union agrees to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment.

Any person who is, will be or was required to attend plumbing classes two evenings each week for 24 consecutive months, as a condition of membership in the Union, is mandated to complete training in HAZCOM and OSHA safety classes, or to produce proof such training has been completed. Such persons not fulfilling this obligation will not be referred out to work.

SECTION 4.2. Reporting Accidents. It shall be the duty of the employee in charge to report personally to both the Union and the Employer accidents involving personal injury which may occur on the job where they are employed.

SECTION 4.3. Employer Insurance. Employers shall carry sufficient Workers Compensation, public liability and unemployment insurance, together with occupational disease insurance. The Employer shall provide the Union with a copy of the insurance certificates or such other proof that it has obtained and maintains in full force and effect such insurance coverages.



SECTION 4.4. Unsafe Working Conditions. Employees covered by this Agreement shall not work under any of the following conditions:

1. Where the equipment, tools, ladders and/or job conditions are judged to be unsafe by the Building Trades Safety Committee.

2. For any Employer who does not carry a bond or meet the other obligations as provided for in Section 6.8 of this Agreement and have sufficient Worker's Compensation Insurance and State Unemployment Insurance. (A copy of these coverages shall be on file in the Union Office.)

3. 125 feet above ground level unless an operable man lift is provided to transport the employee to or above that level.

4. On any job not in conformity with the safety standards promulgated pursuant to the Occupational Safety and Health Act.

5. For more than one (1) Employer at the same time.

SECTION 4.5. Plumbing Codes. The Employer shall comply with all plumbing codes of the various municipalities in which the work is being installed. Any violation of said plumbing ordinances shall be reported to the office of the Business Manager of the Union.

The Union reserves the right to have its Business Representatives witness all tests of any plumbing systems.

SECTION 4.6. Older Workers. At least one out of every five (5) men working in the shop shall be older men.

SECTION 4.7. Non-Discrimination Policy. Each Employer bound under the terms of this Agreement shall promulgate and enforce policies forbidding any sexual harassment or discrimination based on race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service.

SECTION 4.8. Staffing. In order to provide for the safety and health of their employees, the Employer agrees that at no time shall there be less than two (2) journeymen, or one (1) journeyman and one (1) apprentice, working in any one (1) building of any job or job site (except, however, that this provision shall not apply to jobbing work as the term is generally used in the industry). The Employer shall be the sole judge of the number of additional men required.

All Employers who do not employ two (2) employees, as stipulated in the area agreement, will be required to meet with the Local Union 130 Business Manager as soon as possible. The Employer will be told that he is required to comply with the terms of the agreement (with the understanding that temporary latitude may be allowed in a depressed economy).

However, during the times that the Employer is not in compliance with the Agreement:

a. Each week the Employer is required to send a written report to the Union of all jobs on which his company is working.

b. His company will be audited every six (6) months and at year end.

c. Any and all of his Employees will submit an affidavit annually stating that, "to the best of his (the employee's) knowledge, he performed all the jurisdictional work completed by the shop".

d. Progress and status of these shops will be reported through the Joint Arbitration Board and violation of the agreement may result in a fine of the value of wages and fringes for all hours worked by others, other than the Journeyman.

The Union agrees to supply skilled men to the extent that they are available, to the members of the Plumbing Contractors Association of Chicago and Cook County, it being understood that the Union shall furnish men to all other Employers with whom it has Agreements governing wages and working conditions. When employment opportunities exist within the industry, the Union will refer men only to Employers with whom the Union has signed Agreements.

The Metal Trades Division of the Union is composed of members employed by signatory contractors to perform tasks not requiring a plumber's license or other tasks described as non-jurisdictional work.

Wages for these employees are determined by the plumbing contractor, but minimally will be equal to those of a first year apprentice. Fringe benefit payment is optional.

A contractor employing at least two (2) building tradesmen may request one metal tradesman for performance of non-jurisdictional work. A second metal tradesman may be requested by a contractor employing at least eight (8) building tradesmen. Thereafter, additional metal tradesmen may be referred to a contractor employing at least twelve (12) building tradesmen in ratios of eight (8) building tradesmen to one metal tradesman. At no time may the number of metal tradesmen exceed the number of apprentices in a shop.



An employee in the Metal Trades Division may, upon the request of the Employer, enter the Apprentice Program provided the requirements of the Apprentice Committee are satisfied. Credit for hours worked as a metal tradesman toward hours required for completion of an apprenticeship will be granted as determined by the Bureau of Apprenticeship.

The parties agree that, effective June 1, 2001, total hours worked by all metal tradesmen will be reported monthly. The hours of those not receiving benefits will be shown on a supplement sheet attached to the contribution report. Only those hours reported to the Union will be considered for credit toward fulfillment of the apprentice requirements.

SECTION 4.9. Pipe Cutting. All sizes of pipe shall be cut and threaded and/or welded and fabricated by employees covered by this Agreement. There shall be no restrictions on the use of power equipment. Where it is impractical or a hardship to cut, thread, or weld pipe on the job in the opinion of the Employer involved, such pipe may be cut, threaded or welded and fabricated in the shop. Flashings and air chambers shall be made on the job or in the shop by journeymen plumbers and/or apprentices covered by this Agreement. Such cutting, threading, and/or welding, fabrication and making of flashings and air chambers shall be performed by journeymen and apprentices of the Union.

All pipe, hanger rod and fabricated piping of any size which is cut in the shop of the Employer or in any approved Employer's shop covered by this Agreement shall be labeled by the journeymen performing the work. The journeymen who obtain the labels from the office of the Business Manager of the Union shall be held accountable for said labels.

All sizes of pipe shall be cut and threaded by employees covered by the Collective Bargaining Agreement of Local Union 130, except for pipe nipples which are defined as lengths of 10 inches or less.

SECTION 4.10. Specifications. Specifications and contract information forms shall be distributed by the Union to all Employers. The Employer shall complete these forms for all jobs above Two Hundred Thousand Dollars ($200,000.00) for which he has received a signed contract and within ten (10) days after receipt of such signed contract shall forward a copy of the form to the

office of the Business Manager of the Union. Intentional falsification of information on these forms shall constitute a violation of this Agreement.

SECTION 4.11. Plumbing Supervision. It is understood that for the purpose of maintaining a proper record and check on all work which comes under local ordinances and/or the Illinois Plumbing License Law such work should be done under the supervision of a licensed and bonded Plumbing Contractor, and by licensed journeymen and apprentices and to protect the public against unsanitary installation by unqualified men, it will not be considered a violation of this Agreement for any journeyman to adhere to the rules of the Union. Nothing shall be incorporated in the "Working Rules" of the Union that conflict in any way with the provisions of the Agreement.

SECTION 4.12. Rule Violators. Any employee having charge of work who is taken out of a shop for violation of Union rules shall be required to remain one (1) working week of forty (40) hours in an advisory capacity if the Employer so desires, the case to be entitled to a hearing as provided in Article III of this Agreement.

SECTION 4.13. OSHA and HAZCOM Training. The Employers wish to have referral of Employees with certificates of completion of HAZCOM and OSHA education courses.

The Union will inform all members three times yearly that they must be certified in HAZCOM and OSHA. It will not be a violation of this Agreement for any Employer to reject a Union member for employment if he lacks these certifications. Classes in both OSHA and HAZCOM will be offered regularly at the Plumbing Industry Center.

The Employers will provide the Union with names of Employees who have already been certified so that the certification information can be retained and updated in computerized form.

A referral slip, arrived at from a computerized data base, will reflect certification in these areas.

Jobbing and service repair class, to be taught at day and night school, will be jointly developed to help in this market recovery or retention effort.

$0.01 per hour will be contributed to a separate, dedicated, J.A.C. account to be used exclusively for an OSHA and HAZCOM training program. This training program will be co-sponsored by the Plumbing Contractors Association. Any registration fee, if required, will be paid by the Employer.



SECTION 4.14. OSHA and HAZCOM Violations. A written citation will be issued by the Employer to the employee for each violation of OSHA and HAZCOM requirements and a copy will be sent to the Union. An employee can be terminated immediately for wilful violations of OSHA and HAZCOM standards.

The offending employee will be summoned before the Union Executive Board upon receiving a third citation and appropriate action will be taken. He will also be apprised that upon receipt of a fourth citation the matter will be turned over to the Joint Arbitration Board for disposition that may result in the employee sharing in the amount of the Employer's fines.

SECTION 4.15. Automobile Not Required. No journeyman shall be required to furnish his automobile or any other conveyance for any purpose other than to transport himself to and from the job.

SECTION 4.16. Work Connected Expenses. All expenses incurred by an employee in telephoning or otherwise connected with his work shall be paid by the Employer.

SECTION 4.17. Travel Expenses. There will be no travel expense for work performed within the jurisdiction of the Union except when prefabrication of work is performed outside the Union's jurisdiction. A journeyman so employed in a fabrication shop will be reimbursed in the same amount per mile as established from time to time by the Internal Revenue Service for determining the standard mileage rate method of calculating deductible employee automobile business expenses. Said reimbursement shall be calculated from the job site to the place of fabrication and back to the job site. However, if any Employer provides transportation for employees working under this Agreement to a fabrication site to perform work, then no travel expense shall be assessed or charged against such Employer.

SECTION 4.18. Tool Provision. The journeymen shall furnish small pliers and rule; all other tools shall be furnished by the Employer. No journeymen shall be allowed to carry tools or materials belonging to the Employer in the journeymen's automobile, with one exception; that exception is that an employee whose automobile is covered by his own automobile insurance policy may voluntarily agree to carry hand tools, including sawsall, electric drill (1/2" or smaller), hand torch without tank, radio (communication type), and pipe wrenches not to exceed 18". Should an employee voluntarily agree to carry any hand tools on

behalf of his Employer, the Employer shall pay any additional insurance cost necessary to make the employee's existing automobile insurance coverage apply to this business use. The Employer may keep a record of his tools to guard against loss or damage to his equipment. Journeymen who receive tools from their Employers shall be responsible for such tools and make good for any tools lost by said journeymen. The Employer will countersign the receipt and provide the employee with a copy. Upon return of the tools both parties will sign off on a dated receipt indicating which if not all the tools have been returned. The Union will require journeymen to replace or pay for lost or missing tools furnished by their Employer and for which the latter holds a receipt from his journeymen.

SECTION 4.19. Clothing Provision. When welders are employed on a job, the Employer shall furnish protective clothing, which shall include sleeves, aprons and gloves, welding hoods, goggles, etc. The welders shall be held responsible for this clothing, except for wear and tear or if stolen from the Employer's job location.

## ARTICLE V
## HOURS AND OVERTIME

SECTION 5.1. Work Day and Work Week. Eight (8) hours shall constitute a day's work as follows: 8:00 A.M. to noon and 12:30 to 4:30 P.M. on Monday, Tuesday, Wednesday, Thursday and Friday making a forty (40) hour week straight time. The workweek shall be limited to forty (40) hours per week and any and all overtime shall be only with the prior approval of the Joint Arbitration Board, except in the case of actual breakdowns of installed work falling within the jurisdiction of the Union. Such breakdowns shall be reported to the Joint Arbitration Board as soon as possible, but in no event later than 4:30 P.M. of the following business day. With the approval of the Joint Arbitration Board, the 8:00 A.M. starting time and 4:30 P.M. quitting time, specified above, may be adjusted by starting no earlier than 6:00 A.M. with an appropriately adjusted earlier quitting time, e.g. 6:00 A.M. to 2:30 P.M. In the case of an earlier adjusted starting time, employees shall be entitled to one-half (1/2) hour lunch break, no later than five (5) hours after the adjusted starting time.

For employees engaged in residential jobbing and repair work in a residential building of no more than three (3) stories where such work is billed to the customer on an hourly basis and not on a contract basis, any five (5) days with the exception of Sunday may constitute a workweek. The workday shall consist of eight (8) hours from 8:00 A.M. to 4:30 P.M., provided however, that the earlier starting time as provided for above is permitted. Any hours worked in



excess of eight (8) hours per day shall be paid at time and one-half. All hours worked on the sixth (6th) day in any workweek other than a Sunday or a legal holiday shall be paid at time and one-half. All hours worked on Sunday or a legal holiday as provided for in Section 5.4 of this Article V shall be paid at double time. The sixth (6th) working day cannot be used as a make up day. Except as specifically permitted by Appendix B to this Agreement governing the circumstances under which an Employer may schedule flexible hours, employees covered by this Agreement shall work the standard work day and standard work week at straight time rates and be paid for overtime work at the overtime rates as required by this Article.

Saturday may be used as a make up day subject to the following conditions:

a. The time being made up is due to loss of hours related to weather conditions.

b. Prior permission to work the make up day must be obtained from the Joint Arbitration Board.

c. The decision by the employee to work must be voluntary.

Four ten hour days may constitute a normal work week for specific projects. Prior approval must be received from the Joint Arbitration Board before a contractor may schedule these hours for a project. Approval to work this schedule will be granted for a maximum of sixteen working days. Additional days may, upon request, be granted by the Board if it is deemed necessary.

In general, approval will be considered only for remodeling work where a regular eight hour workday may impede the progress of the job, resulting in an undue burden on the owner of the property.

If more than one crew is needed to perform the work, all crews will be scheduled to work the same four days, Monday through Friday. Starting one crew on Monday and another on Tuesday is not permissible. The rate of pay for a schedule of four ten hour days shall be regular time except for the hours worked outside the adjusted starting and quitting times (6:00 a.m. to 4:30 p.m.) which shall be paid at time and one half.

SECTION 5.2. Overtime. In the event of overtime work, as provided in Section 5.1 above, such overtime work shall be performed at the rate of time and one-half if such overtime work occurs during the period from Monday through



EXHIBIT No.